DONALD GLENN and ABE HUNTER, Jr., on behalf of themselves and all others similarly situated, Plaintiffs, v. FIDELITY FINANCIAL SERVICES, INC. OF ALABAMA, FIDELITY FINANCIAL SERVICES, INC. OF MISSISSIPPI, FIDELITY FINANCIAL SERVICES, INC., etc., Defendants.

CIVIL ACTION NO. 94-0858-CB-M

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

1996 U.S. Dist. LEXIS 1835

February 1, 1996, Decided
February 1, 1996, FILED

**COUNSEL:** [*1] For WANDA S. COAKER, plaintiff: Alvin T. Prestwood, [COR LD NTC], Volz, Prestwood, Hanan, & Sizemore, L.L.C., Montgomery, AL.

For SAAD'S HEALTHCARE SERVICES, HOME NURSING SERVICES, INC., defendants: Joseph F. Danner, Esq., [COR LD NTC ret], Mobile, AL.

**JUDGES:** Charles R. Butler, Jr., CHIEF DISTRICT JUDGE. Mag. Judge William E. Cassady

**OPINIONBY:** Charles R. Butler, Jr.

**OPINION: OPINION AND ORDER**

This matter is before the Court on plaintiffs' motion to remand this case to the Circuit Court of Mobile County, Alabama. After careful review of the issues presented, the Court finds that state court is the proper forum for this action. Therefore, for the reasons set forth below, the motion to remand is hereby **GRANTED**.

**Factual Background**

Plaintiffs Donald Glenn and Abe Hunter, Jr., both of whom are Alabama residents, filed the instant action in the Circuit Court of Mobile County against defendants Fidelity Financial Services, Inc. of Alabama, ("Fidelity/Alabama"), an Alabama corporation, Fidelity Financial Services, Inc. of Mississippi ("Fidelity/Mississippi"), a Mississippi corporation, and the parent company of those corporations, Fidelity Financial Services, Inc. [*2] ("Fidelity"), a Minnesota corporation. The complaint, which is brought as a class action, arises from consumer credit transactions to finance the purchase of automobiles. Plaintiffs, who were parties to such contracts, contend that the defendants "engaged in a course of deceptive and fraudulent conduct wherein hidden finance charges were added to the amounts financed at excessive interest in each transaction." Compl. at 2. Specifically, the complaint states that the hidden finance transactions were charged as dealer discounts or dealer reserves which were not disclosed to plaintiffs. Based on these facts, plaintiffs allege four state-law causes of action against the defendants--

EXHIBIT A

misrepresentation (Count 1), suppression of a material fact (Count 2), willful misrepresentation or suppression of a material fact (Count 3) and breach of contract (Count 4).

In 1991, plaintiff Donald Glenn and his wife filed a bankruptcy petition in the United States Bankruptcy Court for the Southern District of Alabama. The Glenns' Chapter 13 plan was confirmed and remains pending. Fidelity filed a proof of claim in the bankruptcy action.

## Legal Conclusions

HN1 In a removal action, the party [*3] asserting jurisdiction has the burden of establishing that the action was properly removed. Ray v. Bird & Son & Asset Realization Co., Inc., 519 F.2d 1081 (5th Cir. 1975). The defendants contend that federal subject matter jurisdiction in this case arises from three different sources--bankruptcy, federal question and diversity. First, they argue that the Court has original jurisdiction over plaintiff Glenn's claims (and supplemental jurisdiction over the claims of Hunter and the members of the class) because Glenn's action is a core proceeding in his bankruptcy case. Next, defendants assert federal question jurisdiction because, according to defendants, plaintiff's state-law claims are based upon the Truth-in-Lending Act. Finally, defendants claim that the Court has diversity jurisdiction because the only non-diverse defendant, Fidelity/Alabama, was fraudulently joined to defeat diversity.

## Federal Bankruptcy Jurisdiction

HN2 While Congress has given federal courts have original jurisdiction over "all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11", 28 U.S.C. § 1334, it has also conferred upon courts wide [*4] discretion to remand actions related to bankruptcy, even though such actions were properly removed. Bankruptcy removals are governed by 28 U.S.C. § 1452, a special removal statute, which permits a district court to "remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b).

Defendants argue that remand is not appropriate because the Glenn's action against defendants is a core proceeding in bankruptcy. HN3 Core proceedings are those which are "'integral to the core bankruptcy function of restructuring debtor-creditor rights'... and ... include 'all necessary aspects of a bankruptcy case[.]'" In re Arnold Print Works, Inc., 815 F.2d 165, 167 (1st Cir. 1987) (quoting 130 Cong. Rec. E1108-09 (daily ed. March 20, 1984)). Defendants cite In re Arnold Printworks in support of the proposition that the federal court *should* keep a case which is a core proceeding in bankruptcy. The central issue in that case was not whether the federal court should retain jurisdiction; rather, the issue was whether the bankruptcy court had the constitutional power to hear and decide the case in light of the seminal bankruptcy case, Northern Pipeline Construction Co. v. [*5] Marathon Pipe Line Co., 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982). After determining that the bankruptcy court did have the power to hear and decide the core proceeding before it, the Arnold Printworks court acknowledged that the bankruptcy court still had the option to abstain from hearing the case: "We recognize that the bankruptcy court retains the power to abstain from deciding a case for reasons

of justice, comity with state courts, or respect for state law, ... *but no such reason applies here.*" Arnold Printworks, 815 F.2d at 171 (emphasis added).

[HN4] As section 1452(b) makes no distinction between core and non-core proceedings for the purpose of remand, the Court may remand a core proceeding if the equities weigh in favor of remand. The fact that a proceeding is a core proceeding is but one factor for consideration in deciding whether to remand. See id. Among the equitable factors to be considered are:

> 1) duplication of judicial resources; 2) uneconomical use of judicial resources; 3) effect of remand on the administration of the bankruptcy estate; 4) case involves questions of state law better addressed by a state court; 5) comity; 6) prejudice [*6] to the involuntarily removed parties; 7) lessened possibility of an inconsistent result; and 8) expertise of the court where action originated.

River Cement Co. v. Bangert Bros. Constr. Co., 852 F. Supp. 25, 27 (D. Col. 1994); see also In re Riverside Nursing Home, 144 Bankr. 951, 956 (S.D. N.Y. 1992) (citing similar factors).

The Court finds that these factors when considered *in toto* weigh in favor of remand in this case. Some of the factors are neutral. For instance, there is no danger of duplication or uneconomical use of judicial resources or of an inconsistent result because there is no other case pending in state or federal court involving the issues at hand. n1 Other than pointing out that this is a core proceeding, a point not disputed by plaintiffs, defendants have not discussed the effect of this case on the bankruptcy action. For aught that appears, the effect on the bankruptcy action would be no different if the case were remanded since defendants have proposed that this matter remain in the district court. In either case, it would be handled as a separate proceeding from the bankruptcy action. Other factors, such as the state-law origin of plaintiffs' [*7] claims, weigh slightly in favor of remand. Although this Court is often called upon to decide issues of state law, the state court is the better forum to decide such matters.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 At the time this action was removed, there was an action pending against these same defendants, brought by a different plaintiff, under the Truth in Lending Act. That action has since been dismissed.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

More importantly, the prejudice to the involuntarily removed parties provides a strong basis for remand. Neither plaintiff Hunter nor the potential class members chose to litigate this matter in this forum. Their claims are entirely

unrelated to Glenn's bankruptcy. It is only by the happenstance of that bankruptcy action that Hunter, and perhaps hundreds of others, might be required to pursue their state-law claims in federal court. This factor, coupled with the lack of any significant reason to maintain this action in federal court, persuades the Court that bankruptcy jurisdiction is not a sufficient basis to retain this action. Consequently, [*8] the Court must examine the other jurisdictional grounds asserted by plaintiff--federal question and diversity.

**Federal Question Jurisdiction**

Although plaintiffs' complaint makes no mention of federal law, defendants argue that jurisdiction is nonetheless proper under HN5 28 U.S.C. § 1331, which gives district courts "original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States." A case arises under federal law if federal law creates the cause of action. Franchise Tax Board v. Laborers Vacation Trust, 463 U.S. 1, 9, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983). In addition, a state law claim may be considered to arise under federal law if resolution of that claim "necessarily turned on some construction of federal law." Id.

In Caterpillar, Inc. v. Williams, 482 U.S. 386, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987), the Court set forth the framework for determining whether removal is proper in a case such as this:

> HN6
> 
> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented [*9] on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

Id. at 392. However, in Franchise Tax Board, the Court recognized as "an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint[.]" Franchise Tax Board, 463 U.S. at 22.

Defendants contend that plaintiffs have artfully pled their causes of action to disguise two claims which give rise to federal-question jurisdiction. First, defendants argue that plaintiffs' fraud claims arise under the Truth in Lending Act ("TILA") 15 U.S.C. § 1601, et seq., because disclosure of finance charges in consumer contracts is required by TILA as is the manner in which those charges must be calculated and disclosed. However, HN7 the mere existence of a federal cause of action does not compel the exercise of federal jurisdiction. A plaintiff may choose to proceed exclusively under state law and thereby avoid federal jurisdiction. Caterpillar, 482 U.S. at 392.

Plaintiffs in this case have [*10] chosen to rely on state law claims for fraud and misrepresentation. HN8 Alabama law gives rise to claims for fraud and

misrepresentation which are completely independent of the TILA. See Jones v. Mercury Finance Co. of Alabama, Civil Action No. 94-0739 (S.D. Ala. Dec. 13, 1994). Consequently, these claims cannot be considered a basis for federal-question jurisdiction.

Next, defendants argue that plaintiffs' breach of contract claims are created by federal law because there would be no contractual privity without certain contractual language, required by the TILA, which permits a consumer to maintain a cause of action against the assignee of a contract. Federal regulations enacted pursuant to the TILA require the following provision in all retail installment sales contracts:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT THERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2.

Defendants contend that without this language plaintiffs could not overcome the holder-in-due course [*11] doctrine and, therefore, could not maintain a breach of contract action under state law. While Plaintiffs state that they are relying upon the state law concept of "special relationships", and not upon the above-quoted language or 16 C.F.R. § 433.2, for their breach of contract action, defendants respond that plaintiffs cannot succeed under their state law theory. Therefore, defendants argue that plaintiffs must necessarily be relying on TILA. However, HN9 the fact that plaintiffs may not be entitled to recover under state law would be a reason for dismissal by the state court rather than a basis for federal-question jurisdiction. See Blackmon v. Ray Hughes Chevrolet, Inc., CV 94-T-1169-N, p. 3 (M.D. Ala. Sept. 30, 1994).

The complaint must raise some issue of federal law in order for a federal court to assume jurisdiction, and this one does not. In Cook v. Chrysler Credit Corporation, 174 Bankr. 321 (M.D. Ala. 1994), Judge Albritton addressing an identical argument held:

> The mere fact that the plaintiffs may have brought the action under 16 C.F.R. § 433.2, standing alone, does not support removal jurisdiction. HN10 Even though it is not essential to bring a claim under a [*12] federal statute to create federal question jurisdiction, there must be a substantial question of federal law in dispute between the parties. The court is not convinced that the complaint alleges any claims which a rise under or turn on the construction of federal law.

Id. at 326. In the case at hand, not only does the complaint fail to raise any

issue of federal law, plaintiffs have expressly disavowed any reliance on federal law, premising their claims instead exclusively on state law.

**Diversity Jurisdiction**

HN11 In order for the Court to retain jurisdiction on the basis of diversity of citizenship, defendants must satisfy the Court by a preponderance of the evidence (1) that all properly joined defendants are residents of a state other than Alabama and (2) that the amount in controversy exceeds $ 50,000. Although defendants and plaintiffs focus on the former requirement, arguing over whether Fidelity/Alabama was fraudulently joined to defeat diversity, the Court finds it unnecessary to decide this issue because it is not satisfied that the amount-in-controversy requirement is met.

HN12 To satisfy their burden of establishing diversity jurisdiction, the defendants [*13] must show that "it does not appear to a legal certainty that [the plaintiff's] claim is really for less than the jurisdictional amount." Opelika Nursing Home, Inc. v. Richardson, 448 F.2d 658, 663 (5th Cir. 1971). In other words, "if by a reasonable probability it appears that there is an amount in controversy exceeding the jurisdictional amount, calculated pursuant to some realistic formula, the defendants have met their burden." Mutual First, Inc. v. O'Charleys of Gulfport, Inc., 721 F. Supp. 281, 282 (S.D. Ala. 1989); see also Gafford v. General Electric Co., 997 F.2d 150 (6th Cir. 1993) (adopting preponderance of the evidence test to determine whether defendant has met burden of establishing requisite amount in controversy). In addition, the defendants must overcome the narrow construction this court is required to apply to its diversity jurisdiction. City of Indianapolis v. Chase National Bank, 314 U.S. 63, 76-77, 86 L. Ed. 47, 62 S. Ct. 15 (1941).

In the removal petition, defendants aver that the amount in controversy exceeds $ 50,000 because plaintiffs (and class members) have a common and undivided interest in their claim for punitive damages and attorneys' [*14] fees and because plaintiffs' request for equitable relief, if granted, would cause a loss to each defendant of more than $ 50,000. n2 Neither of these is sufficient to sustain jurisdiction.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Court notes that this case has not been certified as a class action, but for purposes of this discussion will presume that it will be maintained as such.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Supreme Court has established HN13 a long-standing principle against the aggregation of claims to satisfy the amount-in-controversy requirements. n3 See Snyder v. Harris, 394 U.S. 332, 22 L. Ed. 2d 319, 89 S. Ct. 1053 (1969). Although Snyder dealt only with the aggregation of compensatory damages, other courts have rejected the aggregation of punitive damages or attorney's fees as violative of the spirit of Snyder. n4 See, e.g., Goldberg v. CPC International, Inc., 678 F.2d 1365 (9th Cir. 1982) (refusing to aggregate attorney's fees); Visintine v. Saab Automobile, A.B., 891 F. Supp. 496 (E.D.

Mo. 1995) (refusing to aggregate punitive damages); [*15] Fountain v. Black, 876 F. Supp. 1294 (S.D. Ga. 1994) (same). Thus, even assuming *arguendo* that the total amount of either punitive damages or attorney's fees exceeds $ 50,000, defendants may not rely on these to satisfy the jurisdictional limit.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Although there is an exception to the non-aggregation rule where the plaintiffs' claims are to be satisfied from a common fund, CITE defendants could not rely on a common fund theory since each class member's claim is based on a separate and independent contract.

n4 In a recent Fifth Circuit case submitted by the defendant, In re Abbott Laboratories, 51 F.3d 524 (5th Cir. 1995), the court upheld the district court's calculation of the amount in controversy attributable to the named plaintiff by aggregating the total amount of attorney's fees in issue with the amount of damages sought by that plaintiff However, the appellate court noted that under Louisiana law attorney's fees were awarded to the named plaintiff, rather than to the class as a whole. The same is not true in Alabama where an award of attorneys' fees spreads the costs of litigation among all members of the class. Eagerton v. Williams, 433 So. 2d 436, 450-51 (Ala. 1983).

- - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*16]

Defendants argue that punitive damages claims should be aggregated because they form a common fund for recovery. In Hall v. ITT Financial Services, 891 F. Supp. 580 (M.D. Ala. 1995), Judge Thompson squarely rejected a similar claim:

> In some instances, lower courts have allowed the aggregation of punitive damages to meet the jurisdictional amount. See, e.g., Lailhengue v. Mobil Oil Corp., 775 F. Supp. 908, 913-14 (E.D. La. 1991); Martin v. Granite City Steel Corp., 596 F. Supp. 293, 297 (S.D. Ill. 1984). However, in those cases, the plaintiffs' right to punitive damages arose from a single event or act of conduct by the defendant, such as a mass tort. They did not involve separate and discrete claims based on contractual rights... The claims for relief in this case are based on individual contracts and cannot be considered to constitute an integrated right against defendants. Defendants' alleged breach of contract, fraud, outrage, and unconscionability result in a separate and distinct liability to each class member, and each class member is, in theory, entitled to an award of punitive damages. The court therefore concludes that the claims for punitive damages [*17] cannot be aggregated and attributed to the class as a whole to meet the jurisdictional amount. $^{HN14}$Because the claims are separate and independent, the punitive damages should be

attributed to each class member on a pro rata basis to determine the jurisdictional amount. See, e.g., Lindsey v. Alabama Tel. Co., 576 F.2d 593, 595 (5th Cir. 1978).

Id. 582. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 In support of their position that punitive damages are part of a common fund, defendants have submitted two opinions written by Judge Propst of the United States District Court for the Northern District of Alabama, Arnold v. Ford Motor Co., CV-95-PT-0073-M (N.D. Ala. May 2, 1995) and Calloway v. Baker Furniture Company, CV-94-PT-2751-S (N.D. Ala. February 16, 1995). Neither of these opinions states the reasoning which led to that conclusion. The Court finds Hall to be more persuasive and, therefore, declines to follow these decisions.

In addition, after the briefing period the defendants, by letter, cited to the Court a recent Fifth Circuit opinion, Allen v. R. & H. Oil & Gas Co., 63 F.3d 1326 (1995), wherein that court upheld the aggregation of punitive damages for purposes of determining jurisdiction. That case is distinguishable, however, because it involved tort claims arising from a single event, an oil and gas well explosion. The instant case involves discrete breach of contract and fraud claims each arising from a separate contract.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*18]

Nor can defendants rely on plaintiffs' demand for equitable relief to meet the amount-in-controversy requirement. The equitable relief requested by plaintiffs consists of (1) a declaration that defendants' practices of imposing undisclosed dealer discounts or dealer reserve finance charge violates the law and (2) enjoining defendants from imposing such discounts or charges in the future. Most courts have held that [HN15] the value of equitable relief should be determined based on the value of such relief to the plaintiff, rather than the cost to the defendant. See, e.g., Packard v. Provident National Bank, 994 F.2d 1039, 1050 (3d Cir. 1993) (and cases cited therein); Shelly v. Southern Bell Telephone & Telegraph Co., 873 F. Supp. 613, 616 (M.D. Ala. 1995). Moreover, defendants cannot use a prayer for injunctive relief to circumvent the non-aggregation rule set forth in Snyder. Pierson v. Source Perrier, S.A., 848 F. Supp. 1186, 1190 (E.D. Pa. 1994).

Plaintiffs' first requested relief, a declaration that defendants violated the law, is nothing more than a restatement of their legal claims. Because monetary damages are available to remedy these claims, they cannot be considered [*19] equitable in nature. Packard, 994 F.2d at 1050. Plaintiffs' second requested relief, an injunction against similar unlawful practices in the future, is essentially the assertion of the right of individual future consumers to be protected from similar practices. See Snow v. Ford Motor Co., 561 F.2d 787 (9th Cir. 1977). As such, the Court must consider the value of any potential

injunction to each consumer. Since the Court is not satisfied that the damage awards to any current plaintiff would meet the jurisdictional minimum, it is also not persuaded that the value of the injunction to individual future consumers would satisfy that amount.

Finally, the Court must address the impact of In re Abbott Laboratories, 51 F.3d 524 (5th Cir. 1995), on the case at hand. In that case, the Fifth Circuit held that the Judicial Improvements Act of 1990, 28 U.S.C. § 1367, effectively overruled Zahn v. International Paper Co., 414 U.S. 291, 38 L. Ed. 2d 511, 94 S. Ct. 505 (1973). In Zahn the Supreme Court held that diversity jurisdiction did not exist unless *each* class member satisfied the jurisdictional amount. Abbott holds that a federal court may exercise supplemental [*20] jurisdiction over the claims of the class *if at least one plaintiff satisfies the jurisdictional amount*. Since the defendants have failed to establish that any plaintiff meets the jurisdictional minimum, Abbott is not applicable. Visintine, 891 F. Supp. at 499; see also Fountain, 876 F. Supp. at 1298 (declining to decide whether the Judicial Improvements Act overruled Zahn because no plaintiff satisfied the jurisdictional amount).

## Conclusion

This Court has neither diversity or federal-question jurisdiction over this action. Furthermore, the Court declines to exercise its bankruptcy jurisdiction over the claims of plaintiff Glenn, which would lead to supplemental jurisdiction over the entire class. Accordingly, it is **ORDERED** that this action be and hereby is **REMANDED** to the Circuit Court for Mobile County, Alabama.

**DONE** this the 1st day of February, 1996.

Charles R. Butler, Jr.

**CHIEF DISTRICT JUDGE**