UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNIE MAE KING, as Conservator over the Estates of EARNEST L. COTTRELL and ROSIE J. COTTRELL, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| THE PROVIDENT BANK, FAMILY FINANCIAL AND MORTGAGE SERVICE, LITTON LOAN SERVICING LP, C-BASS LLC, GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., PROVIDENT CONSUMER FINANCIAL SERVICES, and SCOTT THOMPSON, | )<br>)<br>) Civil Action No. 2:05-CV-961-MEF-SRW<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

## MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION BY DEFENDANT NATIONAL CITY BANK, THE SUCCESSOR TO THE PROVIDENT BANK AND ITS DIVISION, PROVIDENT CONSUMER FINANCIAL SERVICES

Defendant National City Bank, the Successor to the Provident Bank and its division, Provident Consumer Financial Services ("Defendant" or "National City"), reserving all other rights and defenses, hereby moves this Court to enter an order staying all proceedings, including discovery, and compelling Plaintiff to arbitrate her claims. In support of this motion, National City submits the following:

### BACKGROUND

In July 2000, Earnest Cottrell entered into a mortgage loan with The Provident Bank that was brokered by Family Financial and Scott Thompson. During the loan closing, Mr. Cottrell

1

executed an arbitration agreement, which states in pertinent part that he would submit to arbitration "any claim, controversy, disagreement or lawsuit of any nature whatsoever arising out of or in any way related to the loan . . . ." *See* Decl. of James E. Pechiney with arbitration agreement, attached hereto as Ex. 1.

On August 26, 2005, Plaintiff Johnnie Mae King, the conservator of the estate of Earnest and Rosie Cottrell, filed a Complaint on their behalf in the Circuit Court of Montgomery County, Alabama. National City removed the suit to the United States District Court for the Middle District of Alabama on October 6, 2005. In the Complaint, Plaintiff asserts a variety of claims, including claims for fraudulent misrepresentation, omission, unconscionability, and unjust enrichment based on allegations that the various defendants inadequately disclosed facts regarding the variable-rate mortgage obtained by Cottrell and the costs associated with it. *See* Compl. ¶¶ 12–36; 49–53. These claims, however, fall within the scope of the arbitration agreement executed by Earnest Cottrell. As such, Plaintiff's claims are subject to arbitration, and National City's motion to stay the proceedings and to compel arbitration of those claims should be granted.

## ARGUMENT

Federal law mandates that Plaintiff arbitrate her claims against National City in this case. Not only are arbitration agreements such as the one executed by Plaintiff presumptively valid, but the prerequisites established by Section 2 of the Federal Arbitration Act ("FAA") for the enforcement of such agreements are clearly satisfied here. Accordingly, National City's motion to stay the proceedings and to compel arbitration of Plaintiff's claims is due to be granted.[1]

---

[1] This request for arbitration is timely. The arbitration agreement states that either party may request arbitration "within sixty days after a complaint, an answer, a counterclaim, or an amendment to a complaint has been served." *See* Ex. 1. This motion to compel is being filed

2

I.  **Arbitration agreements are presumptively valid.**

The FAA establishes that arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). With its enactment, Congress placed arbitration agreements "upon the same footing as other contracts." *Id.* at 271 (quotation omitted). "[G]eneralized attacks on arbitration," based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989)). Instead, Congress, with its enactment of the FAA, and the Supreme Court, through its interpretation of the FAA, have together created a strong federal policy favoring the enforcement of arbitration agreements. *See Battels v. Sears Nat'l Bank*, 365 F. Supp. 2d 1205, 1211 (M.D. Ala. 2005) (Fuller, C.J.) ("[C]ourts must rigorously enforce agreements to arbitrate."). These policies are so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract

---

within sixty days of service of National City's answer, which was filed on October 13, 2005. Additionally, the Defendants have reserved their right to compel arbitration in the documents they have filed in this case, all of which were filed within sixty days after service of the Complaint. *See* Notice of Removal by National City at 6 ("By removing this Action, National City and the other consenting defendants do not waive any defenses or rights they may have, including rights to arbitration."); Answer to Compl. by National City at 1 ("While reserving all rights to arbitration, Defendant National City Bank . . . answers the allegations of the Complaint . . . ."); Answer to Compl. by National City at 14 ("This action is subject to arbitration if any contract documents concerning the variable-interest loan alleged in Paragraph 15 of the Complaint or the insurance policy alleged in Paragraph 24 of the Complaint contain an applicable arbitration clause."); Answer of Litton Loan Servicing at 9; Mem. in Support of Mot. to Dismiss by Greenwich Capital Financial Products at 3 n.5.

language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). It is against this backdrop of the strong federal policy in favor of arbitration that this Court should evaluate the merits of National City's motion.

II. **The prerequisites established by the FAA for the enforcement of arbitration agreements are clearly satisfied in this case.**

In addition to their presumed validity, arbitration agreements are specifically enforceable under the FAA if the following prerequisites are met: (1) the existence of a written agreement to arbitrate claims; (2) a transaction involving interstate commerce, and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2. Each of these prerequisites is satisfied in this case.

A. **The parties' arbitration agreement is in writing.**

The arbitration agreement in this case is in writing and signed by both parties. *See* Ex. 1. Thus, the FAA's first prerequisite for enforcement of the arbitration agreement is satisfied.

B. **The parties' transaction involves interstate commerce.**

The United States Supreme Court has repeatedly recognized that, in enacting Section 2 of the FAA, which refers to "transactions involving commerce," Congress was relying on its expansive power under the Commerce Clause of the United States Constitution.[2] *See Perry v. Thomas*, 482 U.S. 483, 491 n.8 (1987); *Southland Corp. v. Keating*, 465 U.S. 1, 14–15 (1984); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967). In *Allied-Bruce*, 513 U.S. at 274–75, the Supreme Court specifically held that the FAA embodies Congress' intent to provide for enforcement of arbitration agreements within the full reach of the Commerce Clause. It held that a narrow interpretation of "commerce" would be inconsistent with the broad reach of

---

[2] The Commerce Clause provides that Congress has the power "[t]o regulate commerce with foreign nations, and among the Several States, and with the Indian tribes." U.S. Const. art. I, § 8, cl. 3.

4

the FAA and would create a new, unfamiliar test that would unnecessarily complicate the law and breed litigation.³ *Id.* at 275. Therefore, the Supreme Court adopted a "commerce in fact" construction of the FAA, which merely requires that the transaction at issue must have substantially involved or affected interstate commerce. *Id.* at 281; *see also Perry*, 482 U.S. at 490 (holding that "the Federal Arbitration Act . . . embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"); *Fry v. United States*, 421 U.S. 542, 547, *cert. denied*, 421 U.S. 1014 (1975) ("Even activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the states . . . .").

The requirement that the transaction involve interstate commerce is met here for two reasons. First, the arbitration agreement expressly provides that the transaction involves interstate commerce. It specifically acknowledges that "the funding for [the] loan will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ 1–9." Ex. 1. "When a contract expressly provides that the transaction involves interstate commerce within the meaning of the FAA, a court will and must enforce the stipulation . . . ." *In re Knepp*, 229 B.R. 821, 834 (Bankr. N.D. Ala. 1999); *see also Staples v. Money Tree*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) ("[B]ecause Staples and Money Tree have stipulated that the contract between them involves interstate commerce within the meaning of the FAA, the court must, and will, enforce the stipulation and apply the FAA to the arbitration agreement contained in the contract.").

---

³ As stated by the Court: "Why would Congress intend a test that risks the very kind of costs and delay through litigation (about the circumstances of contract formation) that Congress wrote the Act to help the parties avoid?" *Allied-Bruce*, 513 U.S. at 278.

Second, even in the absence of the stipulation, the agreement between National City and Plaintiff would still fall within the reach of the FAA. Courts have consistently held that the delivery, transfer, or movement of money across state lines involves interstate commerce and, as a result, justifies application of the FAA. S*ee Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986); *Stile v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410, 1417 (M.D. Ala. 1998); *Roberson v. Money Tree of Ala., Inc.*, 954 F. Supp. 1519, 1523 & n.4 (M.D. Ala. 1997); *Staples v. Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996); *Masthead MAC Drilling Corp. v. Fleck*, 549 F. Supp. 854, 855 (S.D.N.Y. 1982); *Allied-Bruce Terminix Cos. v. Butler*, 816 So. 2d 9, 12 (Ala. 2001); *Thompson v. Skipper Real Estate Co.*, 729 So. 2d 287, 290 (Ala. 1990).

Here, the loan transaction between National City and Mr. Cottrell clearly involved the transfer of money across state lines. *See* Decl. of James E. Pechiney, attached hereto as Ex. 2; *Staples v. Money Tree*, 936 F. Supp. 856, 858 (M.D. Ala. 1996). At the time the loan was made, The Provident Bank was an Ohio corporation with its principal place of business located in Cincinnati, Ohio, and Provident Consumer Financial Services was a division of The Provident Bank (together "Provident"). *See* Ex. 2 at ¶ 2. Mr. Cottrell was located in Alabama, and he signed the note and other loan documents in Alabama. *See id.* at ¶ 6. The loan was approved by Provident in Atlanta, Georgia, and all of Provident's original loan notes, including Cottrell's, were produced in and shipped from Ohio. *See id.* The loan proceeds were wired from Ohio to Paul G. DeLaitsche, an attorney in Montgomery, Alabama. *See id.* at ¶ 7. The Cottrell loan was serviced by Provident through its National Servicing Center located in Cincinnati, Ohio. *See id.* at ¶ 8. All payments were sent from the Cottrells in Alabama to Provident in Cincinnati, Ohio,

where they were processed and applied to the loan balance by Provident's National Servicing Center. *See id.*

Because the parties' transaction involves interstate commerce under Section 2 of the FAA, the second prerequisite for enforcement of an arbitration agreement under the FAA is satisfied.

### C.  Plaintiff's claims are covered by the parties' broad arbitration agreement.

The final inquiry under Section 2 of the FAA is whether the claims asserted fall within the scope of the parties' arbitration agreement. In the present action, the parties' arbitration agreement is broad enough to encompass all of Plaintiff's claims. The parties' arbitration agreement provides that "any dispute, regardless of when it arose, shall be settled . . . by arbitration in accordance with this Agreement." *See* Ex. 1. "Dispute" is defined as:

> any claim, controversy, disagreement or lawsuit of any nature whatsoever arising out of or in any way related to the loan; the arranging of the loan; any application, inquiry or attempt to obtain the loan; the closing and funding of the loan; the terms of the loan; any loan documents; the servicing, collecting and enforcing of the loan; or any other aspect of the loan transaction. It includes, but is not limited to, federal or state contract, tort, statutory, regulatory, common law and equitable claims.
>
> Examples of disputes that are governed by this Agreement include, but are not limited to, those involving:
> The Equal Credit Opportunity Act and Regulation B;
> The Real Estate Settlement Procedures Act and Regulation X;
> The Truth in Lending Act and Regulation Z;
> State insurance, usury, and lending laws; fraud or misrepresentation, including claims for failing to disclose material facts;
> Any other federal or state consumer protection statute or regulation;
> Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
> Any dispute about application for, closing, funding, servicing, collecting or enforcing the loan.

Ex. 1.

When determining the scope of an arbitration provision, the Court must look to the factual allegations of the Complaint and determine whether the claims alleged touch and concern matters covered by the arbitration provision. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 628 (1985); *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384–85 (11th Cir. 1996); *J. J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988). In doing so, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 476 (1989) (citations omitted). Morevoer, the presumption of arbitrability, created by the mere existence of an arbitration clause, can only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Thus, "in order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance." *H.L. Fuller Const. Co. v. Indus. Dev. Bd. of Vincent*, 590 So. 2d 218, 222 (Ala. 1991).

In construing arbitration clauses, courts have also distinguished between "broad" clauses that purport to subject to arbitration all disputes arising out of or related to a contract, and "narrow" clauses that limit arbitration to specific types of disputes. *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988). If a court concludes that the arbitration provision before it is a "broad" one, then the federal presumption in favor of arbitrability applies with even greater force. *AT&T*, 475 U.S. at 650. Additionally, both the

Supreme Court of the United States and the Alabama Supreme Court have expressly held that arbitration clauses employing the phrase "arising out of or relating to" are to be construed as "broad" arbitration clauses. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (classifying as "broad" an arbitration agreement that said "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of New York, in accordance with the rules then obtaining of the American Arbitration Association"); *Reynolds & Reynolds Co. v. King Autos. Inc.*, 689 So. 2d 1, 2 (Ala. 1996) (holding that where "a valid arbitration clause. . . applies to claims . . . 'arising out of or relating to' the contract, that clause has a broader application than an arbitration clause that refers only to claims 'arising from' the agreement").

In this case, the language of the parties' arbitration agreement could not be broader. The arbitration agreement requires arbitration of "any claim, controversy, disagreement, or lawsuit of any nature whatsoever arising out of or in any way related to the loan; the arranging of the loan; any application, inquiry or attempt to obtain the loan; the closing and funding of the loan; the terms of the loan; any loan documents; the servicing, collecting and enforcing of the loan; or any other aspect of the loan transaction." Ex. 1. Furthermore, the arbitration agreement specifically states that it covers disputes involving "fraud or misrepresentation," "[a]ny other federal or state consumer protection statute or regulation," or "[a]ny party's execution of this Agreement and/or willingness to be bound by its terms and provisions." *Id.* Plaintiff's claims alleging fraudulent misrepresentation and omission in connection with the loan in this case clearly fall within the scope of these provisions and touch and concern matters covered by the arbitration agreement. Even if this were not the case, however, Plaintiff cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

asserted dispute." *AT&T*, 475 U.S. at 650. Accordingly, the third and final prerequisite for enforcement of an arbitration agreement under the FAA is satisfied here, and National City's motion to compel Plaintiff's claims to arbitration is due to be granted.

> III. **The FAA mandates a stay of all proceedings, including discovery, in this case because a valid and enforceable arbitration agreement exists between the parties.**

This Court should not only compel Plaintiff's claims to arbitration, but it should also stay all proceedings in this matter, including discovery, pending the conclusion of Plaintiff's arbitration proceedings. A stay is proper in this action under Section 3 of the FAA, which provides for a stay of litigation where issues are referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In enacting Section 3, Congress deliberately chose not to utilize precatory language giving trial courts discretion in deciding whether to issue a stay. Instead, the stay provisions found in Section 3 of the FAA are mandatory. Where "the issues in a case are within the reach of the agreement, the district court has no discretion under Section 3 to deny the stay." *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 751 (5th Cir. 1986); *see also McMahon Sec. Co. v. Forum Capital Mkts., L.P.*, 35 F.3d 82, 86 (2d Cir. 1994); *Pierce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987); *Ex Parte Redshaw, Inc.*, 524 So. 2d 367, 369 (Ala. Civ. App. 1987) (stating that the FAA "requires that a trial court stay

judicial proceedings pending before it and enforce the arbitration provisions of the parties' contract when such exist").

Moreover, Section 7 of the FAA provides for discovery by the arbitrator. Any additional discovery would create "dual discovery," thereby contravening the expense- and time-saving purpose that arbitration was designed to serve. *See Miss. Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558, 567–68 (S.D. Miss. 1976) ("There should be no necessity for double-barrelled discovery, proceeding simultaneously under the supervision of the Court, on one hand, and under the supervision of the arbitrator, on the other, a situation fraught with the likelihood of conflicts, duplications, hindrances and delays, all basically in conflict with the arbitration process . . . ."); *see also Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (reversing a district court's decision to allow discovery to proceed during arbitration); *Corpman v. Prudential-Bache Secs., Inc.*, 907 F.2d 29, 31 (3d Cir. 1990) (same).

For these reasons, if this Court properly enters an order compelling arbitration, it must also stay all proceedings, including discovery, during the pendency of the arbitration proceedings.

## CONCLUSION

Based on the foregoing, National City respectfully requests this Court to enter an order: (1) compelling Plaintiff to submit her claims to arbitration in accordance with the terms of the parties' arbitration agreement, and (2) staying all proceedings, including discovery, pending the conclusion of the arbitration proceedings.

Dated: November 23, 2005

                      Respectfully submitted,

                      s/ Robert K. Spotswood
                      Robert K. Spotswood (SPO 001)

                      SPOTSWOOD LLC
                      ROBERT K. SPOTSWOOD (SPO 001)
                      KENNETH D. SANSOM (SAN 047)
                      JOHN R. PARKER, JR. (PAR 123)

                      940 Concord Center
                      2100 3rd Avenue North
                      Birmingham, AL 35203
                      Phone: 205-986-3620
                      Fax: 205-986-3639
                      E-mail:rks@spotswoodllc.com

                      Attorney for National City Bank

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNIE MAE KING, as Conservator over the Estates of EARNEST L. COTTRELL and ROSIE J. COTTRELL,<br><br>        Plaintiff,<br><br>v.<br><br>THE PROVIDENT BANK, FAMILY FINANCIAL AND MORTGAGE SERVICE, LITTON LOAN SERVICING LP, C-BASS LLC, GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., PROVIDENT CONSUMER FINANCIAL SERVICES, and SCOTT THOMPSON,<br><br>        Defendants. | Civil Action No. 2:05-CV-961-MEF-SRW |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2005, I electronically filed the foregoing MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION BY DEFENDANT NATIONAL CITY BANK, THE SUCCESSOR TO THE PROVIDENT BANK AND ITS DIVISION, PROVIDENT CONSUMER FINANCIAL SERVICES, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

    Jere L. Beasley, Esq.
    W. Daniel Miles, III, Esq.
    C. Lance Gould, Esq.
    BEASLEY, ALLEN, CROW,
        METHVIN, PORTIS & MILES, P.C.
    P.O. Box 4160
    Montgomery, AL  36103

Richard D. Lively, Esq.
364 E. Main Street
Prattville, Alabama  36067

John T. Bender, Esq.
McFadden, Lyon & Rouse, L.L.C.
718 Downtowner Boulevard
Mobile, Alabama  36609

Michael Scott French, Esq.
Windy Angela Hillman, Esq.
Wargo & French LLP
1170 Peachtree St NE
Suite 2020
Atlanta, GA 30309


DATED: November 23, 2005

                                              s/ John R. Parker, Jr.
                                              John R. Parker, Jr. (PAR 123)

                                              SPOTSWOOD LLC.
                                              940 Concord Center
                                              2100 Third Avenue North
                                              Birmingham, AL  35203
                                              Tel.: (205) 986-3620
                                              Fax: (205) 986-3639
                                              E-Mail: rks@spotswoodllc.com

                                              Attorney for National City Bank