UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNIE MAE KING, as Conservator over the Estates of EARNEST L. COTTRELL and ROSIE J. COTTRELL, <br><br> Plaintiff, <br><br> v. <br><br> THE PROVIDENT BANK, FAMILY FINANCIAL AND MORTGAGE SERVICE, LITTON LOAN SERVICING LP, C-BASS LLC, GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., PROVIDENT CONSUMER FINANCIAL SERVICES, and SCOTT THOMPSON, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 2:05-CV-961-MEF-SRW |

**OPPOSITION TO PLAINTIFF'S MOTION TO REMAND
BY DEFENDANT NATIONAL CITY BANK,
THE SUCCESSOR TO THE PROVIDENT BANK
AND ITS DIVISION, PROVIDENT CONSUMER FINANCIAL SERVICES**

The Motion to Remand submitted by the Plaintiff, Johnnie Mae King, addresses the jurisdictional question before the Court in general terms, rather than in terms of the specific, deferential relationship that the Alabama Consumer Finance Code establishes with federal law governing mortgage-related disclosures. Because the Alabama Consumer Finance Code looks to federal law to determine the adequacy of disclosures, the state-law claims in King's Complaint do so as well. Thus, those state law claims raise significant federal questions that provide jurisdiction to this Court.

## BACKGROUND

This Court must determine federal subject-matter jurisdiction by assessing the relevant jurisdictional facts at the time of removal, and should ignore later attempts to amend or recast those facts to return the case to state court. *See Poore v. American-Amicable Life Ins. Co.*, 218 F.3d 1287, 1289–91 (11th Cir. 2000). As applied to this case, in which King alleges fraud, this principle confines King to the facts as she alleged them in her original Complaint, even though those facts lack the specificity required to sustain a fraud claim on the merits under Federal or Alabama Rule of Civil Procedure 9(b).

King's Complaint alleges that the various defendants, participating in different ways, inadequately disclosed facts to Earnest and Rosie Cottrell, of whose estate King is the conservator, to induce them to refinance their house, to conceal settlement costs associated with and added to the variable-rate mortgage, and to insure the house with a policy whose premiums were added to the mortgage, *see* Compl. ¶¶ 12–25. In Count I of the Complaint, King further alleges that the inadequate disclosure of the mortgage and its settlement costs are actionable as fraud under Alabama law. Compl. ¶¶ 26–31. In Count II of the Complaint, King separately alleges that the inadequate disclosure of the insurance is also actionable as fraud under Alabama law. Compl. ¶¶ 32–36. Finally, in Counts VII and VIII of the Complaint, King alleges that the variable-rate mortgage secured through inadequate disclsoure was unconscionable and, separately, unjustly enriched the defendants. Compl. ¶¶ 49–53.

## ARGUMENT

I. **KING'S ALABAMA-LAW CLAIMS CAN ONLY BE RESOLVED BY REFERENCE TO FEDERAL DISCLOSURE STANDARDS. ACCORDINGLY, THEY RAISE SUBSTANTIAL FEDERAL QUESTIONS.**

A. <u>Alabama defers to federal disclosure standards. Thus, Alabama-law claims challenging the adequacy of mortgage disclosures necessarily raise substantial federal questions.</u>

For the sake of brevity, National City will not repeat here the black-letter law of federal-question jurisdiction. Whether a complaint raising Alabama-law causes of action presents substantial federal questions, and thus creates federal subject-matter jurisdiction, boils down to whether the Alabama-law claims "'really and substantially involve a dispute or controversy respecting the validity, construction or effect of [federal] law.'" King. Mem. Br. at 5 (quoting *Mobil Oil Corp. v. Coastal Petroleum Co.*, 671 F. 2d 419, 422 (11th Cir. 1982)); *see also, e.g., Hill v. BellSouth Telcomms., Inc.*, 364 F.3d 1308, 1314–17 (11th Cir. 2004); *Ayres v. GMC*, 234 F.3d 514, 517–20 (11th Cir. 2000). Several district courts have found that state-law causes of action implicating the federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, present such federal-law disputes. *See Alison v. Household Fin. Corp. of Ala.*, No. 04-0254-CG-L, slip op. at 4–5 (S.D. Ala. Aug. 2, 2004) (Alabama causes of action) (citing *Hill*, 364 F.3d 1308) (attached to Notice of Removal as Exhibit D); *Gandy v. People's Bank & Trust Co.*, 224 B.R. 340, 342–45 (S.D. Miss. 1998); *Jones v. Barnes*, 1998 U.S. Dist. LEXIS 22904, at *4–7 (S.D. Miss. Aug. 28, 1998); *Allen v. Jerome Imports, Inc.*, 1998 U.S. Dist. LEXIS 2186 (E.D. La. Feb. 23, 1998). As explained below, Alabama-law claims challenging the adequacy of mortgage-related disclosures implicate TILA and other federal statutes, and thus create such federal law disputes, because Alabama law defers to the standards established by those statutes.

In 1994, the Alabama Legislature amended the Alabama Consumer Finance Code, Code of Alabama, Title 5, Chapter 19, which is frequently referred to as the "Mini-Code." The Legislature determined that "[f]ederal laws, regulations, and interpretations, including the federal Truth-in-Lending Act and other federal consumer credit disclosure laws, establish a comprehensive system for disclosure of credit terms to consumers." It further observed that "[t]he Administrator of the Mini-Code [Alabama's Superintendent of Banks] has determined that the disclosures presently required by federal law are adequate." Act of Alabama 94-115, § 1, *reprinted with* Ala. Code § 5-19-6. In light of this recognition of the comprehensiveness and adequacy of federal disclosure regulation, the Alabama Legislature cautioned that "[t]o avoid confusion to consumers and conflicts with federal law and to provide certainty with respect to required disclosures, it is essential that any disclosures required by the Mini-Code[,] in addition to those required by federal law[,] be carefully considered, specifically stated, and prospective in application." *Id.*

Accordingly, the Legislature amended the Code to require "[n]o disclosures . . . by a creditor with respect to any transaction other than disclosures required by": (1) regulations issued by the Alabama Superintendent of Banks, (2) a particular Code provision mandating disclosure to buyers who purchase goods or services outside of the seller's regular place of business of their right to rescind within three days, (3) another particular Code provision mandating that debtors be informed of their right to purchase their own insurance on loan collateral before a lender places insurance on the collateral, and (4) a final Code provision requiring a one-sentence notice to the effect that consumers should read contracts before signing them. Ala. Code § 5-19-6(b) (citing Alabama Code §§ 5-19-21, 5-19-12(a), 5-19-20(e), and 5-19-6(a)).

In 1996, the Legislature further amended the Mini-Code to shield creditors, in relevant part, from Code liability "for any act or practice done or omitted in conformity with . . . any rule, regulation, interpretation, or approval of any applicable . . . federal agency." Ala. Code § 5-19-21(c). Thus, with very limited and carefully specified exceptions, the Alabama Legislature has adopted federal law to determine the adequacy of mortgage-related disclosures.

In this case, none of the exceptions are implicated. The Alabama Superintendent of Banks has issued no regulations regarding mortgage-related disclosures. *See* Ala. Admin. Code, ch. 155-2-2, *available at* http://www.bank.state.al.us/regulations/loans/Main_Menu.htm. And King's Complaint does not allege a home-solicitation sale involving the three-day revocation right, or that the Cottrells were not told that they could not purchase their own insurance,[1] or that there was no written warning to the Cottrells to read loan documents before signing them.

This leaves the disclosures at issue to be assessed only under the comprehensive federal law governing mortgage-related disclosures to which the Alabama Legislature and Superintendent of Banks have deferred. *See* 15 U.S.C. § 1602 (placing home mortgages within TILA's scope); § 1605(c) (governing disclosure of property insurance placement by lenders); § 1631(a) (requiring creditors to make the disclosures mandated by TILA); § 1638 (setting out the basic disclosure parameters for mortgages); 12 U.S.C. §§ 3801–3806 (closely related Alternative Mortgage Transaction Parity Act authorizing non-federally chartered lenders to provide variable-rate mortgages under federal regulations applicable to federally chartered

---

[1] The Complaint alleges only that the Cottrells were not advised of the price of self-purchased insurance compared to that of force-placed insurance, Compl., ¶ 33(a)—advice that the Mini-Code does not require, *see* Ala. Code § 5-19-20(e). Moreover, the Court has supplemental jurisdiction of any claims not presenting federal questions pursuant to 28 U.S.C. § 1367. Thus, there would be supplemental jurisdiction of the separate cause of action for fraud based on nondisclosure of force-placed insurance features, even if that cause of action, alone, did not raise substantial federal issues.

lenders); 12 C.F.R. §§ 226.1–226.4, 226.17–226.27, 226.30, 226.36 ("Regulation Z" of the Federal Reserve Board implementing TILA's home-mortgage disclosure requirements); 12 U.S.C. § 2602 (placing residential mortgage settlements within the scope of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*); § 2603 (requiring disclosure of settlement costs on a HUD-approved form); § 2604 (requiring distribution of a HUD "booklet" explaining settlement costs to borrowers); 24 C.F.R. §§ 3500.1–3500.12 (HUD "Regulation X" implementing RESPA's settlement-costs disclosure requirements).

The task of this Court, as specified by the Alabama Legislature and Superintendent of Banks, is to determine the adequacy of the mortgage-related disclosures for the mortgage at issue under this comprehensive scheme. Because the Alabama Legislature and executive branch have given the Court this task, the Court cannot avoid deciding substantial questions of federal law in deciding King's claims arising from alleged disclosure inadequacy. Accordingly, the Court has federal-question jurisdiction.[2]

### B. There is no place in Alabama law for common-law fraud claims to displace the legislative and administrative deference to federal disclosure standards.

King tries to avoid Alabama's legislative and administrative deference to federal disclosure standards by asserting that she raises only "garden-variety fraud claims," as though the common law of Alabama permitted fraud claims in the loan-disclosure context regardless of the judgment of Alabama's Legislature and Superintendent of Banks. Pl. Mem. Br. at 6. Alabama common law, however, provides no disclosure duty relating to mortgages *qua* mortgages. *See Ex*

---

[2] This action is subject to arbitration pursuant to an arbitration agreement entered into as part of the loan agreement. *See* Mot. to Stay Proceedings & Compel Arbitration by Def. National City (filed November 23, 2005). The arbitration agreement, however, does not affect this jurisdictional analysis, which has the practical effect of determining whether a federal or state court should decide the motion to compel arbitration.

*parte Ford Motor Credit Co.*, 717 So. 2d 781, 786–87 (Ala. 1997) (holding that the debtor-creditor relationship does not create any common-law disclosure duties). Instead, Alabama common law imposes a duty to disclose only when a purchaser of goods or services makes a specific inquiry regarding a transaction feature, *see id.* at 786–87, or when there is a special, confidential relationship between the parties sufficient to confer a fiduciary duty on the lender, *see id.* Apart from these circumstances, Alabama's common law respects the judgment of Alabama's legislative and executive branches to defer to federal law.[3]

King has failed to allege either circumstance that would give rise to a duty to disclose under Alabama common law. *See* Compl., ¶¶ 12–36; Pl.'s Mem. Br. at 2 (allegations and summary of the allegations).[4] This failure is particularly evident because King should have endeavored to comply with the heightened pleading requirements for fraud claims imposed by Alabama Rule of Civil Procedure 9(b). *See* Ala. R. Civ. P. 9(b) ("In all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity."). Therefore, the

---

[3] It is questionable whether a more aggressive role for state common law in this context would be permitted by TILA and RESPA. Both TILA and RESPA allow coordinated state regulation of loan disclosures, but only to the extent that such regulation does not conflict with federal law. If such regulation does conflict with federal law, it is preempted. *See* 15 U.S.C. § 1610 (TILA); 12 U.S.C. § 2616 (RESPA). These statutes further permit the federal agencies charged with their enforcement to determine whether a given state law conflicts, and is therefore preempted, upon application of an interested party. *See* 12 C.F.R. § 226.28 (Federal Reserve Board enforcing TILA); 24 C.F.R. § 3500.13 (HUD enforcing RESPA). A common-law duty whose contours are defined from case to case is not consistent with this scheme of preemption, which contemplates predictable and defined provisions that can be assessed concretely, and with lasting effect, for consistency with federal law.

[4] Although the Complaint alleges that a conservator has now been appointed to administer the estates of the Cottrells, Compl., ¶ 1, it does not allege any facts indicating the incompetence of the Cottrells during the relevant time period, *see* Compl., ¶¶ 12–25. The naked conclusions of law found in paragraphs 44 and 47 are not such allegations.

question of disclosure adequacy in this case must be decided in accordance with federal law, as the coordinate branches of Alabama government contemplate.[5]

### C. <u>The decisions cited by King do not address Alabama's deference to federal standards.</u>

King has cited four remand decisions to support her argument that the Court has no jurisdiction of this case.[6] Two of these four decisions, however, reject complete-preemption TILA theories, which the defendants here have not even asserted. *See Walker v. Commercial Credit Corp.*, 192 Bankr. 260 (M.D. Ala. 1996); *McCrae v. Commercial Credit Corp.*, 892 F. Supp. 1385 (M.D. Ala. 1995).[7] Another decision rejects the notion that a mere reference to violations of "state and federal laws" raises a federal question that is sufficiently substantial to confer subject-matter jurisdiction. *See Anderson v. Household Fin. Corp. of Alabama*, 900 F.

---

[5] Alabama cases addressing the circumstances under which a duty to disclose exists have generally been decided in the context of fraud claims. Because the unconscionability and unjust enrichment claims also depend on disclosure inadequacy—via the concepts that the inadequacy of disclosures made the loan and insurance arrangements unconscionable and unjust—they also depend on whether Alabama will imply a disclosure duty at common law that exceeds the deference of statute and regulation to federal law.

[6] Because remand decisions of federal district courts are generally not subject to appellate review, 28 U.S.C. § 1447(d), such decisions can never be more than persuasive authority. *See* MOORE'S FEDERAL PRACTICE, CIVIL, § 134.02, nn.22–23 & accompanying text (citing 11th and 7th Circuit authority for the proposition that federal district court decisions never, by themselves, constitute controlling authority); *cf. Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003); *MediSys Health Network, Inc. v. Local 348-S UFCW*, 337 F.3d 119, 124 (2d Cir. 2003); *Century Bus. Servs. v. Bryant*, 69 Fed. Appx. 306, 312, 2003 U.S. App. LEXIS 13877, at *19 (6th Cir. Jul. 8, 2003) (all concluding that remand orders have no issue-preclusive effect because they are generally shielded from appellate review by 28 U.S.C. § 1447(d)); MOORE'S FEDERAL PRACTICE, CIVIL, § 132.03, nn. 170–72 & accompanying text (observing the more general principle that unappealable determinations of a federal district court have no issue-preclusive effect). On the other hand, decisions retaining cases in federal court have greater weight because they are subject to appellate review and, frequently, special screening by courts of appeals for jurisdictional defects.

[7] In *McCrae*, the defendants argued that the Alabama Mini-Code barred liability for certain disclosure deficiencies. *See* 892 F. Supp. at 1387 n.3. The Court correctly observed that whether the Mini-Code bars liability is a merits, rather than a jurisdictional, question. Here, National City argues only that the Court must look to federal law to decide the merits; it does not argue what the results of that examination will be.

Supp. 386, 388–89 (M.D. Ala. 1995). The final decision, *Glenn v. Fidelity Fin. Servs.*, 1996 U.S. Dist. LEXIS 1835, at *8–12 (S.D. Ala. Feb. 1, 1996), rests in part on the idea that Alabama common law generally confers a disclosure duty broader than TILA's in a debtor-creditor relationship—an idea inapplicable here under current Alabama law, *see supra* Part I.B (citing *Ex parte Ford*)—and in part on a purported federal question that the defendants do not urge the Court to consider here.

None of the cases cited by King evidence any argument about the critical policy decision of the Alabama Legislature and Superintendent of Banks to defer, under the current version of the Alabama Consumer Finance Code, to federal disclosure standards, or about the creation, by that deference, of substantial, unavoidable federal questions in the midst of state-law claims. Thus, the decisions cited by King are inapposite. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been decided as to constitute precedents."); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999) ("We are persuaded, however, that the *Kennedy* footnote does not prevent courts in this Circuit from judicially noticing relevant public records on file with the SEC, because the judicial notice concept was apparently not argued to the *Kennedy* panel." (citing *Webster*)).

D. **If the Court has questions about the effect of Alabama's deference to federal disclosure standards on the state-law claims in this case, it should ensure that those important questions are resolved definitively by certifying them to the Alabama Supreme Court or the Eleventh Circuit.**

It is important to ensure that the jurisdictional effects of the Mini-Code's deference to federal disclosure standards are predictably and consistently applied. The Court has two mechanisms available to it to resolve definitively any lingering questions that it may have about

those effects and ensure that such questions are not relegated to endless debate by parties citing conflicting district court decisions to courts. *See supra* n.6. First, pursuant to Alabama Rule of Appellate Procedure 18, the Court may certify questions regarding Alabama disclosure law to the Alabama Supreme Court. *See* Ala. R. App. P. 18 (permitting any "court of the United States" to certify questions to the Alabama Supreme Court); *Price v. Time, Inc.*, 304 F. Supp. 2d 1294, 1297–1309 (N.D. Ala. 2004) (sample certification by a federal district court to the Alabama Supreme Court).

Second, the Court may pose such questions to the Eleventh Circuit—by denying remand and certifying the jurisdictional issues for interlocutory review—for an authoritative resolution that holds the promise of reducing the possibility that future cases will involve the citation of decisions pointing in both directions. *See* 28 U.S.C. § 1292(b) (authorizing federal district courts to certify interlocutory orders for immediate appeal when such orders "involve[] a controlling question of law as to which there is substantial ground for difference of opinion" and when "the immediate appeal" from such orders "may materially advance the ultimate termination of the litigation"); *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 866 (5th Cir. 2003) (commending a district court for denying a motion for remand and certifying under § 1292(b) a difficult question of Louisiana law that was determinative of the jurisdictional amount under 28 U.S.C. § 1332); *Watson v. Philip Morris Cos.*, 2003 U.S. Dist. LEXIS 24512, at *67–73 (E.D. Ark. Dec. 12, 2003) (collecting cases from the First, Fourth, Fifth, Seventh, and Ninth Circuits approving of § 1292(b) certifications of remand denials to decide important jurisdictional questions and noting the United States Supreme Court's implicit approval of an Eleventh Circuit interlocutory remand-denial appeal in *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 346, 119 S. Ct. 1322 (1999)), *aff'd*, 420 F.3d 852 (8th Cir. 2005). If presented with an

interlocutory appeal of a remand denial, the Eleventh Circuit may itself choose to certify the most important questions of state law to the Alabama Supreme Court. *See Blue Cross & Blue Shield v. Nielsen*, 116 F.3d 1406, 1412–14 (11th Cir. 1997) (noting the Eleventh Circuit's frequent certification of state-law questions to state supreme courts and the appropriateness of the procedure to ensure consistency in state law).

The Court's utilization of either of these mechanisms to seek a binding resolution of any questions it may have would clarify the jurisdiction of Alabama federal courts over cases like this one and would, therefore, be preferable to the issuance of a nonbinding opinion leaving the same issues to be litigated again.

## II. IT IS UNDISPUTED THAT THE DEFENDANTS ACTED UNDER THE AUTHORITY OF FEDERAL OFFICERS.

Section 1442(a)(1) provides an additional ground for removal in this case.[8] It permits removal by, in relevant part, the following:

> (1) The United States or any agency thereof or any officer (or *any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a)(1) (emphasis added). This provision is to be interpreted expansively. *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999) ("We have rejected a narrow, grudging interpretation of [section 1442(a)(1)] . . . ." (quotation omitted)); *Watson v. Philip Morris Cos.*,

---

[8] Courts have questioned whether § 1442(a)(1) is procedural rather than jurisdictional. *See In re Adm'rs of Tulane Educ. Fund*, 954 F.2d 266, 270 n.4 (5th Cir. 1992). To the extent that § 1442(a)(1) is procedural, King has waived her right to contest removal under it because she did not do so within thirty days of the October 6, 2005, removal. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446 (a)."). In any event, King's current remand motion should not be granted because it is incomplete. King has not challenged the removal on independent § 1442(a)(1) grounds, and National City should be given an opportunity to respond should King attempt to append § 1442(a)(1) arguments to her current remand motion.

420 F.3d 852, 860 (8th Cir. 2005) ("We have been instructed by the Supreme Court to interpret this removal statute broadly . . . .").

When the federal government regulates an area of conduct with comprehensive and detailed regulations, removal is proper under § 1442(a)(1) because the regulated party acts under the direction of a federal officer. *See Watson*, 420 F.3d at 856–57 (upholding removal under § 1442(a)(1) on the ground that a tobacco company was "acting under the direction of a federal officer" due to the FTC's comprehensive, detailed regulation of the tobacco industry).

Here, King's suit is based on her allegation that The Provident Bank and the other defendants failed to disclose certain information to Earnest Cottrell in connection with the mortgage loan he obtained on July 21, 2000. Such loan-related disclosures are governed by comprehensive federal regulations, including, as they are commonly called, Regulation X, 24 C.F.R. § 3500 *et seq.*, and Regulation Z, 12 C.F.R. § 226 *et seq*. These regulations are detailed and specific, requiring the dissemination of particular information using specified forms and formats. Given the pervasive nature of these regulations, a lender acts under the authority of a federal officer when he acts in accordance with them. In this case, the defendants acted pursuant to Regulations X and Z in transacting with the Cottrells. Therefore, they were acting under the authority of a federal officer and removal is proper even if there is no federal question on the face of the Complaint.[9]

---

[9] Generally, "[t]o remove a case as one falling within federal-question jurisdiction, the federal question . . . must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." *Acker*, 527 U.S. at 431. The well-pleaded-complaint rule does not, however, apply to removal under § 1442(a)(1). This statute "serves to overcome the 'well-pleaded complaint rule'," *Mesa v. California*, 489 U.S. 121, 137 (1989), meaning that the federal-question element is met if the federal officer (or one acting under the direction of a federal officer) raises a colorable federal defense. *See Acker*, 527 U.S. at 431. In this case, compliance with the directives of the Federal Reserve Board and HUD presents, at the very least, colorable federal defenses.

## CONCLUSION

Under the dual federal-state regime contemplated by TILA and RESPA, federal statutes and regulations governing mortgage-related disclosures may not federalize every complaint addressing the adequacy of such disclosures. Alabama, however, has chosen to defer to federal standards of disclosure. Thus, a complaint, like the one in this case, that challenges the adequacy of mortgage-related disclosures under Alabama law necessarily implicates substantial questions of federal law on its face. For this reason, such a complaint also confers federal-question jurisdiction. Therefore the motion to remand should be denied.

In addition, the comprehensive scheme of federal regulations governing mortgage-related disclosures permits removal under 28 U.S.C. § 1442(a)(1), regardless of whether the well-pleaded complaint contains federal questions on its face. The Court should carefully consider this point—and require a full adversarial presentation on its merits—before entertaining a remand of this suit.

Dated: November 23, 2005

                              <u>s/ Robert K. Spotswood</u>
                              Robert K. Spotswood (SPO 001)

                              SPOTSWOOD LLC
                              ROBERT K. SPOTSWOOD  (SPO 001)
                              KENNETH D. SANSOM (SAN 047)
                              JOHN R. PARKER, JR. (PAR 123)

                              940 Concord Center
                              2100 3rd Avenue North
                              Birmingham, AL 35203
                              Phone:  205-986-3620
                              Fax:  205-986-3639
                              E-Mail: rks@spotswoodllc.com

                              Attorneys for National City Bank

UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHNNIE MAE KING, as Conservator over the Estates of EARNEST L. COTTRELL and ROSIE J. COTTRELL,<br><br>Plaintiff,<br><br>v.<br><br>THE PROVIDENT BANK, FAMILY FINANCIAL AND MORTGAGE SERVICE, LITTON LOAN SERVICING LP, C-BASS LLC, GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., PROVIDENT CONSUMER FINANCIAL SERVICES, and SCOTT THOMPSON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 2:05-CV-961-MEF-SRW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2005, I electronically filed the foregoing OPPOSITION TO PLAINTIFF'S MOTION TO REMAND BY DEFENDANT NATIONAL CITY BANK, THE SUCCESSOR TO THE PROVIDENT BANK AND ITS DIVISION, PROVIDENT CONSUMER FINANCIAL SERVICES, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Jere L. Beasley, Esq.
    W. Daniel Miles, III, Esq.
    C. Lance Gould, Esq.
    BEASLEY, ALLEN, CROW,
        METHVIN, PORTIS & MILES, P.C.
    P.O. Box 4160
    Montgomery, AL  36103

Richard D. Lively, Esq.
364 E. Main Street
Prattville, Alabama 36067

John T. Bender, Esq.
McFadden, Lyon & Rouse, L.L.C.
718 Downtowner Boulevard
Mobile, Alabama 36609

Michael Scott French, Esq.
Windy A. Hillman, Esq.
Wargo & French LLP
1170 Peachtree St. NE
Suite 2020
Atlanta, Georgia 30309.

DATED: November 23, 2005

/s John R. Parker, Jr.
John R. Parker, Jr. (PAR 123)

SPOTSWOOD LLC.
940 Concord Center
2100 Third Avenue North
Birmingham, AL 35203
Tel.: (205) 986-3620
Fax: (205) 986-3639
E-Mail: rks@spotswoodllc.com

Attorney for National City Bank